## PASSAVANT v. UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 1118. Submitted March 6, 1893. — Decided March 20, 1893.

The act of June 10, 1890, " to simplify the laws in relation to the collection
of the revenue," 26 Stat. 131, c. 407, confers no jurisdiction upon Circuit
Courts of the United States, on the application of dissatisfied importers,
to review and reverse a decision of a board of general appraisers ascer-
taining and fixing the dutiable value of imported goods, when such board
has acted in pursuance of law, and without fraud or other misconduct
from which bad faith could be implied.

THE case is stated in the opinion.

*Mr. Edwin B. Smith* for appellant.

*Mr. Assistant Attorney General Parker* for appellees.

MR. JUSTICE JACKSON delivered the opinion of the court.

The principal question presented by the record in this case
is whether, under the Customs Administrative Act of June
10, 1890, 26 Stat. c. 407, p. 131, the Circuit Courts of the
United States have any jurisdiction to entertain an appeal by
importers from a decision of the board of general appraisers,
as to the *dutiable value* of imported merchandise; in other
words, whether the Circuit Courts of the United States have,
under the provisions of said act, any authority or jurisdiction,
on the application of dissatisfied importers, to review and

reverse a decision of a board of general appraisers, ascertaining and fixing the *dutiable value* of imported goods, when such board has acted in pursuance of law, and without fraud, or other misconduct, from which bad faith could be implied.

The material facts of the case on which this question arises are the following: In November, 1890, and July, 1891, the appellants, Passavant & Co., imported into New York from France gloves of different classes or grades, which were entered by the importers at certain valuations. The collector of the port of New York, under the authority conferred by section 10 of said administrative act, caused the imported goods to be appraised, and upon such appraisal their value was advanced or increased by the appraiser to an amount exceeding by more than 10 per cent the value thereof as declared by the importers upon entry. The importers being dissatisfied with this advanced valuation, a reappraisement was made by one of the general appraisers, and on further objection by the importers to this valuation, the matter was sent to the board of general appraisers, under and in accordance with the provisions of section 13 of the Customs Administrative Act. This board after due notice and examination of the question submitted, sustained the increased valuation of the merchandise. Thereupon the collector of the port levied and assessed upon the imported goods a duty of 50 per cent ad valorem, that being the rate of duty on the gloves under paragraph 458 of the tariff act of October 1, 1890, and in addition thereto a further sum equal to two (2) per cent of the total appraised value for each 1 per cent that such appraised value exceeded the value declared in the entry, under and by virtue of section 7 of said act of June 10, 1890, which provides and directs that "if the appraised value of any article of imported merchandise shall exceed by more than ten per centum the value declared in the entry, there shall be levied, collected and paid, in addition to the duties imposed by law on such merchandise, a further sum equal to two per centum of the total appraised value for each one per centum that such appraised value exceeds the value declared in the entry; and the additional duties shall only apply to

the particular article or articles in each invoice which are undervalued."

The importers duly served upon the collector a protest against his appraisement of duty for any and all excess above 50 per cent ad valorem, and upon any greater value than the declared or entered value, for the alleged reasons that no legal reappraisement had been made; that the board of appraisers had declined to receive or entertain evidence offered by them as to the true market value of the merchandise; that the board had determined matters upon estimates or values furnished by agents of the Treasury; that evidence of persons who were not experts, and had no personal knowledge of the value of gloves in the markets of France, had been taken and acted on; that the importers were given no opportunity to controvert evidence against them; that the original invoice was correct; that the duties should not be assessed upon any greater amount, and that the action of the board was in all respects illegal. The collector duly transmitted this protest, with the papers in the case, to the board of general appraisers, who adhered to the increased valuation, affirmed the action of the collector, and held that the decision of the board as to such valuation was final and conclusive under section 13 of said act of June 10, 1890, and could not be impeached or reviewed upon protest. Thereupon and within due time the importers filed their application in the United States Circuit Court for the Southern District of New York for a review of the case, and a reversal of the decision of the board of appraisers and the action of the collector in assessing the duties on the basis of the increased valuation placed upon the imported merchandise, and in imposing the additional duty as provided by said section 7, above referred to.

The petitioners in their application set forth and complained of many alleged errors of law and fact on the part of the board of general appraisers, which need not be specially noticed, as they were manifestly not well founded and have been abandoned. The board of general appraisers, in pursuance of the usual order in such cases, returned to the Circuit Court the record and evidence taken by them, together with

a certified statement of the facts involved in the case, and their decision thereon, etc.   From this return it appeared that the proceedings as to the appraisement of the merchandise and the determination of their *dutiable value* were in all respects regular; that the board of appraisers duly examined and decided the case after fixing a day and giving reasonable notice thereof to the importers, who were allowed the opportunity to introduce evidence, and to be heard on the matter submitted.   It is stated in the opinion of the board, which forms part of said return, that " the appellants were served with reasonable notice of these several hearings after a day fixed therefor, and were cited to appear before this board, and offer evidence to sustain the contentions of fact alleged as the grounds of their protest.   This they failed to do, and the board accordingly adjudges all of said issues against them as confessedly untrue.   The decision of the collector in each case is affirmed."

Upon the record as thus presented the Assistant United States Attorney moved the court to dismiss the application or appeal for want of jurisdiction to entertain the same. This motion was sustained, and the Circuit Court thereupon certified to this court, under the fifth section of the act of March 3, 1891, 26 Stat. c. 517, pp. 826, 827, the question whether said court had any jurisdiction to enter upon, hear and decide the issues sought to be raised by the allegations of the petition, which are specially set out in the certificate, but need not be here enumerated, as they are embraced in the two general claims or propositions, hereinafter stated, which are relied on by appellants before this court.

In addition to the certification of the question of jurisdiction, the Circuit Court upon dismissing the petition allowed the importers an appeal from the order or judgment of dismissal, which was taken.   But this appeal, although general in form, does not and could not bring up for review anything more than the question of jurisdiction certified by the lower court.   An ordinary appeal from the final judgment of the Circuit Court lies, since the act of March 3, 1891, to the Court of Appeals, and not to this court.   *Hubbard* v. *Soby,* 146 U. S.

56. The certificate and the appeal, therefore, present substantially the same question, and need not, for that reason, be separately considered. It is not claimed or alleged in either the protests made by the importers as to the appraisement of the merchandise, or in their application to the Circuit Court to review and reverse the decision of the board of general appraisers, that there was any wrongful or erroneous *classification* of the gloves, or improper *rate* of duty levied thereon under the tariff act of October 1, 1890; but the substantial complaint is that the *dutiable value* of the imported goods was not greater than the value mentioned in the invoice and declared in the entry, and that the advanced appraisement was, therefore, erroneous, and also that the merchandise was not liable for any additional or penal duty such as the collector levied and imposed thereon under section 7 of the act of June 10, 1890, by reason of the advanced or increased valuation placed upon the same by the appraisers.

Can a complaint of this character be entertained and considered by the Circuit Courts of the United States in a case like the present, where the board of general appraisers has, upon the appeal of the importers, ascertained and decided that the imported article actually possesses a value greater than that stated in the invoice or entry? Can the decision of the board on the question of the dutiable value of the merchandise be reviewed by the courts under the provisions of section 15 of the Customs Administrative Act? This is the real question presented, and we are clearly of the opinion that no such jurisdiction is conferred by this statute or any other provision of law. It is provided by section 15 of the act "that if the owner, importer, consignee or agent of any imported merchandise, or the collector or the Secretary of the Treasury, shall be dissatisfied with the decision of the board of general appraisers, as provided for in section 14 of this act, as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, they or either of them may, within thirty days next after such decision, and not afterwards, apply to the Circuit Court of the United States within the district in which

the matter arises, for a review of the questions of law and fact involved in such decision."

It was said by Mr. Justice Blatchford, speaking for the court in *In re Fassett*, 142 U. S. 479, 487, that "the appeal provided for in § 15 [of said act] brings up for review in court only the decision of the board of general appraisers as to the construction of the law, and the facts respecting the classification of imported merchandise and the rate of duty imposed thereon under such classification. It does not bring up for review the question of whether an article is imported merchandise or not, nor under § 15 is the ascertainment of that fact such a decision as is provided for. The decisions of the collector from which appeals are provided for by § 14 are only decisions as to 'the rate and amount' of duties charged upon imported merchandise, and decisions as to dutiable costs and charges, and decisions as to fees and exactions of whatever character."

The appeal to the court in the present case seeks to review no such decisions as are thus enumerated as falling within its jurisdiction under said sections. On the contrary, the decision of the board of general appraisers sought to be reviewed and corrected by this application to the court relates to the reappraisement of the imported goods. By section 13 of the act the decision of the board on that matter is declared to "be final and conclusive as to the *dutiable value* of such merchandise against all parties interested therein." On such valuation the collector, or the person acting as such, is required to ascertain, fix and liquidate the rate and amount of duties to be paid on such merchandise and the dutiable costs and charges thereon according to law.

It was certainly competent for Congress to create this board of general appraisers, called "legislative referees" in an early case in this court, (*Rankin* v. *Hoyt*, 4 How. 327, 335,) and not only invest them with authority to examine and decide upon the valuation of imported goods, when that question was properly submitted to them, but to declare that their decision "shall be final and conclusive as to the *dutiable value* of such merchandise against all parties interested therein."

In *Hilton et al.* v. *Merritt*, 110 U. S. 97, it was held that the valuation of merchandise made by the customs officers, under the statutes, for the purpose of levying duties thereon, was conclusive on the importer, in the absence of fraud on the part of the officers. In this case several sections of the Revised Statutes of the United States, relating to customs duties, were referred to, among them being section 2930, which prescribed the method of appraising imported merchandise, and provided that "the appraisement thus determined shall be final and deemed to be the true value, and the duties shall be levied thereon accordingly." Under that provision this court held that the valuation of imported merchandise made by the designated officials or appraisers was, in the absence of fraud on the part of such appraisers, *conclusive* on the importer. The same rule was reasserted in the recent case of *Earnshaw* v. *United States*, 146 U. S. 60, in which it was held that a reappraisement of imported merchandise under the provisions of section 2930, Revised Statutes, when properly conducted, was binding. The earlier decisions of this court cited and referred to in *Hilton* v. *Merritt*, and *Earnshaw* v. *United States*, establish the same general rule. The provisions of the Customs Administrative Act of June 10, 1890, as to the finality and conclusiveness of the decision of the board of general appraisers as to the valuation of imported merchandise, when that question has been regularly submitted to and examined by them, is expressed in clearer and more emphatic terms than in former statutes. The language is so explicit as to leave no room for construction. In the tariff legislation of the government, congress has generally adopted means and methods for a speedy and equitable adjustment of the question as to the market value of imported articles, without allowing an appeal to the courts to review the decision reached. If dissatisfied importers, after exhausting the remedies provided by the statute to ascertain and determine the fair dutiable value of imported merchandise, could apply to the courts to have a review of that subject, the prompt and regular collection of the government's revenues would be seriously obstructed and interfered with. The statute authorizes no

such proceeding, and the Circuit Court can exercise no such jurisdiction.

The appraised value of the merchandise having been conclusively ascertained in the manner provided by law, and being found to exceed by more than ten per centum the value declared in the entry, the collector, as a matter of mere computation, under the direction and authority of section 7 of said act, properly levied and collected, in addition to the ad valorem duty imposed by law on such merchandise, a further sum equal to two per centum of the total appraised value for each one per centum that such appraised value exceeded the value declared in the entry.

Section 7 of said act is substantially similar to section 8 of the act of Congress passed on the 30th of July, 1846, 9 Stat. 42, 43, c. 74, which declared that, if the appraised value of imports which have actually been purchased should exceed by ten per centum or more the value declared on the entry, then, in addition to the duties imposed by law on the same, there should be levied, collected and paid a duty of 20 per centum ad valorem on such appraised value. In *Sampson* v. *Peaslee*, 20 How. 571, that provision was sustained and enforced, except as to so much of the additional duty of 20 per centum as was levied upon the *charges* and *commissions*. The court there say that the ruling of the lower court, in confining the additional duty to the *appraised value* of the imports, was the correct interpretation of the section.

As stated by Mr. Justice Campbell, speaking for the court, in *Bartlett* v. *Kane*, 16 How. 263, 274, such additional duties "are the compensation for a violated law, and are designed to operate as checks and restraints upon fraud." They are designed to discourage undervaluation upon imported merchandise and to prevent efforts to escape the legal rates of duty. It is wholly immaterial whether they are called additional duties or penalties. Congress had the power to impose them under either designation or character. When the dutiable value of the merchandise is finally ascertained to be in excess of the value declared in the entry by more than ten per centum this extra duty or penalty attaches, and the collector is directed

and required to levy and collect the same in addition to the ad valorem duty provided by law. The importers in this case cannot be heard to complain of this additional duty or penalty, which was a legal incident to the finding of a dutiable value in excess of the entry value to the extent provided by the statute. They had full notice of the proceedings before the board of general appraisers upon their appeal to said board, and ample opportunity to be heard on the question of the market value of the imported goods. It cannot, therefore, be properly said that they have been subjected to penalties without notice or an opportunity to be heard, or been deprived of their property without due process of law.

The judgment of the Circuit Court dismissing the importers' appeal to that court for want of jurisdiction must, therefore, be

*Affirmed.*