**STEWART v. UNITED STATES CIVIL SERVICE COMMISSION (STATE OF GEORGIA, Intervening Complainant).**

No. 2537.

District Court, N. D. Georgia, Atlanta Division.

June 29, 1942.

A. L. Henson, George D. Stewart, and W. George Thomas, all of Atlanta, Ga., for plaintiff J. E. B. Stewart.

A. L. Henson, Asst. Atty. Gen., of Georgia, and Clifford Walker, Sp. Asst. Atty. Gen., of Georgia, for intervening plaintiff.

Francis M. Shea, Asst. Atty. Gen., of Washington, D. C., Lawrence S. Camp, U. S. Atty., of Atlanta, Ga., L. V. Meloy, of Washington, D. C., Atty. U. S. Civil Service Commission (Sidney J. Kaplan, Sp. Asst. to Atty. Gen., and Martin Norr, Atty., Department of Justice, both of Washington, D. C., of counsel), for defendant.

UNDERWOOD, District Judge.

This is a proceeding under Section 12(c) of the Political Activities Act, approved August 2, 1939, as amended by Act approved July 19, 1940, 18 U.S.C.A. § 61*l* (c), to review a determination and order of the Civil Service Commission in a case before said Commission entitled "In the matter of J. E. B. Stewart and the State of Georgia, No. 79."

A supersedeas and stay of said order having been asked on the ground of un-constitutionality of the Act, a Three-Judge Court was convened, but upon the hearing by said Court, it was held that the proceeding did not present a case for a Three-Judge Court and two of the Judges retired, leaving the case to proceed before a single District Judge, who then heard the case upon the record made in the proceeding before the Commission.

Plaintiff, both in oral argument and in his brief, stated that this proceeding was not filed "for the purpose of directly attacking the constitutionality of the Act, but we are attacking the invading of the Complainant's constitutional rights under the proceeding."

In the proceeding before the Commission, plaintiff was charged with violating Section 12(a) of the Act, 18 U.S.C.A. § 61*l* (a), the pertinent part of which provides:

"No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or (2) directly or indirectly coerce, attempt to coerce, command, or advise any other such officer or employee to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency, or person for political purposes. No such officer or employee shall take any active part in political management or in political campaigns."

The proceeding was initiated by the filing by the Commission of its Letter of Charges set out in the petition, filed in this Court, as "Exhibit A." Objections to the Letter of Charges were filed by plaintiff and Motion to Quash same was interposed, but were overruled by the Commission. However, the Letter of Charges was amended by making fuller statement of the charges. Objections to the amendment were made but overruled.

There were other proceedings before the Commission of like nature against other parties, being Numbers 80 to 86 inclusive. By agreement of all parties, they were heard together and the evidence adduced

used in the cases, respectively, to the extent it was relevant to the particular case.

The evidence was taken in Atlanta, Georgia, before Mr. James W. Irwin, Chief Hearing Examiner of the Commission. The record of the evidence so taken and the Examiner's report based thereon were submitted to the Commission in Washington, D. C., where opportunity to be heard was afforded all parties, the Examiner's Preliminary Report having been previously, on December 19, 1941, mailed to plaintiff's attorneys, Messrs. A. L. Henson, George D. Stewart and Allen Post, and ten days from such date allowed for filing answers to briefs and views expressed in said report.

At such hearing in Washington, the Commission, after argument by plaintiff's counsel, Mr. Henson, who was present, both oral and by brief, made the determination and order complained of in this proceeding, upon said report and record.

The State of Georgia filed an intervention in this Court which was allowed subject to objection. The Commission also filed answers to the petition and amendment thereto and to the intervention of the State of Georgia.

### Findings of Fact.

Upon the foregoing proceedings, had in pursuance of Section 12 of the Act, the Civil Service Commission made substantially the following findings of fact:

Plaintiff and all employees of the Bureau of Unemployment Compensation were at all times mentioned in said proceedings engaged in an activity financed in part by grants made by the United States.

Mr. Ben T. Huiet was Commissioner of Labor of the State of Georgia, an elective office, during the year 1940, and as such was the executive head of the Georgia Bureau of Unemployment Compensation.

Plaintiff was Director of the Bureau of Unemployment Compensation and directly under him were Mr. Marion A. O'Connor, Director of the Employment Service Division, and Mr. James S. Rivers, Director of the Unemployment Compensation Division.

In 1940, Mr. Huiet ran for re-election and in furtherance of his candidacy, a plan was initiated early in March of that year, whereby all employees of the Bureau who made $150.00 a month or more were to contribute one-half of one month's salary to Mr. Huiet's campaign fund. This was to be accomplished by soliciting contributions from the employees through regular supervisory channels.

The solicitation was devised at the top of the Bureau and passed down official channels.

In pursuance of the plan, plaintiff, in March, 1940, called Mr. O'Connor and Mr. Rivers into his office and directed them to help raise the fund, stating that contributions were to be voluntary but expected. They agreed to the plan and Mr. Rex P. Huffman, an employee of the Bureau, was made custodian of the funds to be collected. Subsequently, in March, at a meeting of the Supervisory staff of the Employment Service Division, Mr. O'Connor, at plaintiff's direction, outlined the plan for raising funds and requested the members of the staff to pass the word along to the employees, which was done.

In May, 1940, at a meeting of Bureau officials held at the Henry Grady Hotel in Atlanta, plaintiff explained the plan and told those present that they would be given an opportunity to contribute and to pass the word along. These officials transmitted the plan to the employees under them receiving the specified salary. Contributors were promised refunds, if Mr. Huiet should have no opposition.

For handling of the fund, a bank account was opened on May 8, 1940, with Fulton National Bank of Atlanta, under the name of "J. E. B. Stewart, Special," and withdrawals were restricted to the joint signatures of J. E. B. Stewart and Rex P. Huffman.

All told, contributions to the amount of $3,457.36 were made, of which $2,932.36 were placed in this account.

In October, 1940, plaintiff called another meeting of his department heads in his office and told them that all the employees who had been asked to contribute had not done so or had not contributed as much as asked, and again instructed them to inform the employees that they were expected to make contributions to the fund.

Pursuant to these instructions, Mr. O'Connor, at a meeting in his office of his supervisory force, told them that they would have to again solicit the employees under them. He, at plaintiff's direction, furnished them with a list of the names of their employees, which he had obtained from Mr. Huffman, showing the names of all earning $150.00 or more, and the amount contributed by each of those who had con-

tributed and the names of those who had not. This resulted in additional contributions.

Entries in the September Primary closed on July 25, 1940, and no candidate entered in opposition to Mr. Huiet, who was re-elected in the General Election on November 5, 1940. Expenses of the Huiet campaign were paid out of the fund that was collected and there was left therein, after such payments, approximately $900.00. The promise to refund to contributors any unexpended part of the fund was not kept. In December, 1940, Mr. O'Connor asked plaintiff to make the refunds promised, but plaintiff stated that other expenses had been incurred and that the money would be used for such purposes.

They were used in connection with procuring an amendment to the Georgia Unemployment Compensation Law; to pay the salary of Mildred Holland in the Inspection Division of the Department of Labor Bureau; for the entertainment of the Regional Conference of Unemployment Bureau officials; and for mailing Christmas cards sent out in the name of Mr. Huiet.

After Mr. Huiet's re-election as Commissioner of Labor, plaintiff held a meeting of his department heads a few days prior to December 18, 1940, and told them that further contributions were expected of them and the employees under them. Plaintiff directed Mr. Ralph Macon, Chief of Field Deputies, to write a letter, which plaintiff helped compose, soliciting contributions from Field Deputies under him for the entertainment by Mr. Huiet of Legislators during the on-coming session of the Legislature, and other friends of the Bureau, and for buying and mailing Christmas cards. The letter ended with a paragraph written by plaintiff as follows:

"If you wish to assist in this matter, please mail your contribution as soon as possible. You know our future is wrapped up in that of the Commissioner. If he gets along all right so will we as long as we discharge our respective duties in a satisfactory manner."

Upon the foregoing facts, the Commission found that plaintiff violated the Act in the following particulars:

(1) After July 19, 1940, while an employee of the Bureau, he used his official influence for the purpose of affecting the result of a nomination for and election to office; and

(2) Directly and indirectly coerced, and attempted to coerce other employees of the Bureau to make contributions for political purposes; and

(3) Took an active part in political management and in political campaigns.

The Commission further found that said violations of the Act warranted his removal from employment by the Bureau and ordered that notice of the Commission's determination be given to plaintiff, the State of Georgia, and the Bureau of Unemployment Compensation, as provided by law.

At the beginning of the hearings before the Examiner, it developed that one of plaintiff's attorneys, Mr. Thomas, seeking to appear for plaintiff, had not qualified as required by the rules of the Commission and was by the Examiner, who thought him guilty of improper conduct, prevented from further appearance until he should qualify. However, plaintiff was thereafter represented by his brother, Mr. George D. Stewart, Mr. Allen Post, and Mr. A. L. Henson. Later, the Commission authorized Mr. Thomas to appear but he was not then available and the trial proceeded with representation of plaintiff by his other counsel. Plaintiff at all times declined to testify on the ground that to do so might incriminate him. The hearing was closed. Thirty days were allowed for filing briefs. After the hearing before the Examiner, and after a copy of his Preliminary Report had been submitted to plaintiff and his attorneys, the Commission, after notice, held a hearing in Washington on January 2, 1942, where Mr. Henson argued the case on behalf of the plaintiff and the State of Georgia, orally and by brief.

### Conclusions of Law.

Plaintiff contends that the Commission should have sustained his motions to quash the Letter of Charges and disallowed the amendment thereto on the grounds that the proceeding was criminal and that the law and rules relating to criminal trials were not observed, that the Letter of Charges was in the nature of an indictment and unamendable, and that plaintiff was cited to show cause in Washington, D. C., outside the District of his residence; all in violation of his constitutional rights.

■ The proceeding was under Section 12 of the Act, which was enacted by Congress to safeguard and supervise expenditures of appropriations made by it. It

does not provide for any judgment against plaintiff or the State or compel them to do anything they are unwilling to do, but merely authorizes the withholding of Federal funds unless its protective provisions are complied with. This is a legitimate condition to the granting of Federal funds and in no way infringes upon any right of plaintiff or the State.

■ The proceeding was not criminal but civil, and the criminal laws and rules of procedure were not mandatory. The fact that other sections of the Act might be invalid, or might make certain acts described therein Federal crimes, does not make the proceeding under Section 12 a criminal proceeding or affect its validity, since Section 11 of the Act provides: "If any provision of this Act [sections 61–61k of this title], or the application of such provision to any person or circumstance, is held invalid, the remainder of the Act [said sections], and the application of such provision to other persons or circumstances, shall not be affected thereby."

■■ The rulings of the Commission on the admission of certain evidence were objected to on the ground that the evidence was irrelevant because it related in some instances to transactions prior to the effective date of the Act, July 19, 1940, and in other instances to transactions subsequent to the General Election on November 5, 1940. The fact that transactions took place subsequently to the General Election would not affect acts of plaintiff in violation of the statute subsequent to such date. Of course, transactions prior to the effective date of the Act would not constitute violations of the Act. Evidence of them was not admitted or considered by the Commission as evidence of violations thereof, but only as evidence tending to show plaintiff's motive in conducting subsequent transactions, and as tending to show the character of the fund collected and of the parts thereof used subsequently to such date. The evidence was properly admitted and considered for the purposes for which the Commission admitted it. Furthermore, the application of strict rules of evidence is not necessary in such hearings and it is only required that the party investigated should be given a full and fair hearing, which was done in this case.

■ Plaintiff challenges the validity of the proceedings on the further grounds that the evidence was taken before an Ex-

aminer to whom the Commission had no authority to delegate such function, and that such hearing before the Examiner amounted to a denial to plaintiff of his day in court. This objection is not sound because, "The Commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section * * * and members of the Commission and its examiners when authorized by the Commission may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such documentary evidence may be required from any place in the United States at any designated place of hearing." Section 12(d). Not only does the Act expressly authorize the use of Examiners, but in this case, Mr. Irwin was expressly authorized in writing to hold the hearings. Furthermore, by this very proceeding, authorized by the Act, plaintiff is granted judicial review to correct errors and afford protection against unrestricted arbitrary power. In this aspect the Act respecting delegation to administrative officers is valid and is the usual and approved method of transacting the business of administrative boards and agencies. Mulford v. Smith, 307 U.S. 38, 49, 59 S.Ct. 648, 83 L.Ed. 1092; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202; Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; New York Central Securities Corporation v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

Plaintiff further contends that his constitutional rights are infringed because the grant to the State of the Federal funds in question is made unavailable unless certain conditions are complied with, which in effect amount to coercion upon the State to surrender rights reserved to it by the Constitution.

■ Section 12 of the Political Activities Act has nothing to do with the levying of taxes or appropriating funds, but is concerned only with safeguarding appropriations made from the proceeds of taxes. The proceeds from which the grant is made are derived from funds raised and appropriated by acts not herein questioned and are paid from monies in the gener-

al Treasury. When collected under other acts they are paid into the Treasury and thereafter are subject to appropriation like monies generally. Cincinnati Soap Co. v. United States, 301 U.S. 308, 57 S.Ct. 764, 81 L.Ed. 1122. "Even if they were collected in the hope or expectation that some other and collateral good would be furthered as an incident, that without more would not make the act invalid." Steward Machine Co. v. Davis, 301 U.S. 548, 585, 57 S.Ct. 883, 890, 81 L.Ed. 1279, 109 A.L.R. 1293. For even stranger reasons such hope or expectation would not invalidate an act whose purpose was to provide, as done in Section 12 of the Act, that funds furnished by the United States shall not be coerced from its ultimate recipients or used for improper or corrupt ends.

The Government has a right to place conditions upon the use of its own funds lawfully in the Treasury, and to expend same for the promotion of the general welfare and for other purposes specifically mentioned in the Constitution. "The motive of Congress in exerting the power is irrelevant to the validity of the legislation." Mulford v. Smith, 307 U.S. 38, 48, 59 S.Ct. 648, 652, 83 L.Ed. 1092.

The conditions placed upon the grant in question were lawful and within the constitutional power and discretion of Congress.

The fact that the plaintiff or the State may not comply with conditions of the grant of federal funds "does not frustrate or restrict the congressional power to protect and control what is committed to its own care." Currin v. Wallace, 306 U.S. 1, 11, 59 S.Ct. 379, 385, 83 L.Ed. 441.

Section 12 of the Act is constitutional and the evidence discloses that no constitutional right of the plaintiff was violated by the acts or findings of the Commission or its Examiner. The Commission found upon the record that plaintiff violated the provisions of Section 12 of the Act, and I find, after an examination of the record, that there was substantial evidence to support the determination and order of the Commission.

Where an administrative agency has been set up to whose informed judgment and discretion Congress has committed the determination of questions of fact, on the basis of which it is authorized to make administrative orders, "such determinations will not be set aside by courts if there is evidence to support them. Even though, upon a consideration of all the evidence, a court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment." Swayne & Hoyt, Ltd., v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659; Rochester Tel. Corp. v. United States, 307 U.S. 125, 145, 146, 59 S.Ct. 754, 83 L.Ed. 1147.

The rule above stated is the rule uniformly applied to the findings of administrative officials and boards charged with the duty of finding facts and subjected to review by the courts when their orders are "not in accordance with law." Wheeling Corrugating Co. v. McManigal, 4 Cir., 41 F.2d 593, 594.

Such has been the rule announced in construing the following statutes and powers of administrative officers. Shipping Act, 46 U.S.C.A. § 801 et seq. (Swayne & Hoyt, Ltd., v. United States, 300 U.S. 297, 303, 57 S.Ct. 478, 81 L.Ed. 659); Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. (Opp Cotton Mills, Inc., v. Administrator of Wage & Hour Division of Department of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624); The Packers' and Stockyards Act, 7 U.S.C.A. § 181 et seq. (Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524); Federal Trade Commission (Federal Trade Commission v. Eastman Kodak Co., 274 U.S. 619, 47 S.Ct. 688, 71 L.Ed. 1238); Interstate Commerce Commission (Interstate Commerce Commission v. Union Pacific Railroad Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; United States v. Louisville & Nashville Railroad Co., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245); Administrator of Veterans' Affairs (Silverschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256); Securities Exchange Commission (15 U.S.C.A. § 771); National Labor Relations Board (National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799); Board of Tax Appeals (Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918); Board of Customs Appraisers (Passavant v. United States, 148 U.S. 214, 13 S.Ct. 572, 37 L.Ed. 426); Commissioner of Internal Revenue (Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.

Ct. 587, 72 L.Ed. 985); Postmaster General (Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894); Federal Communications Commission (Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037).

The facts appearing in the record amply support the determination and order of the Commission and same should not, therefore, be set aside or modified as prayed, since they are supported by substantial evidence. (Above cases and § 12 (c) of Political Activities Act).

The same finding is made upon the intervention of the State of Georgia.

The rulings of the Commission on plaintiff's motions and objections to evidence are affirmed.

I find that the determination and order of the Commission are in accordance with law and supported by substantial evidence.

Whereupon, it is considered, ordered and adjudged that said determination and order of defendant be, and hereby are affirmed.