**N. A. WOODWORTH CO. v. KAVANAGH,**
Collector of Internal Revenue.
Civ. A. 10266.

United States District Court
E. D. Michigan, S. D.
Jan. 9, 1952.

James H. Spencer, Marshall M. Massey, Detroit, Mich. (Dykema, Jones & Wheat, Detroit, Mich., of counsel), for plaintiff.

Andrew D. Sharpe, Fred J. Neuland, Special Assts. to the Atty. Gen., Joseph C. Murphy, Acting U. S. Atty., and Roger P. O'Connor Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, District Judge.

The court has before it a motion to dismiss the complaint on the ground that it does not have jurisdiction. This action is brought as the result of the disallowance by the Commissioner of Internal Revenue of that part of the amount of wages paid by the taxpayer to its employees in the fiscal years ended November 30, 1944, and November 30, 1945, determined by the National War Labor Board to have been paid in contravention of the Act of October 2, 1942, known as the Wage Stabilization Act, and the regulations promulgated pursuant thereto.

During the World War of 1941–1945 the plaintiff was engaged in extensive production of aircraft parts for the Government, and in 1944 and 1945 subcontracted a part of its work to five small suppliers and deducted the price paid for parts so produced from its gross income for those years. The National War Labor Board found, through a hearing before one of its tripartite violation panels, that the five suppliers were not independent contractors but integral parts of the plaintiff corporation, that the employees of the suppliers were in reality plaintiff's employees and that the payments made to those employees were made in contravention of the provisions of the Wage Stabilization Act. The panel recommended in a two to one decision that certain sums be disregarded for the purpose of calculating defendant's deductions under the revenue laws of the United States for the taxable years 1944 and 1945.

The findings and recommendations of the panel were considered by an Enforcement Division of the Board which, after a review of the proceedings, the majority and minority findings and recommendations of the panel, approved the findings and recommendations of the majority, but found, as authorized by the regulations to which reference will be subsequently made, that certain extenuating circumstances existed during the period indicated, and determined that the sum of Fifty Thousand Dollars ($50,000) for each of the taxpayer's taxable years ending November 30, 1944, and November 30, 1945, should be disregarded for income tax purposes in lieu of the larger amounts recommended by the panel. This finding and determination were subsequently affirmed by the National Wage Stabilization Board (successor to National War Labor Board). A certificate to this effect was filed by the Board with the Commissioner of Internal Revenue, pursuant to which a deficiency resulting from the disallowance of the above amounts as deductions was assessed against the taxpayer for each of the taxable years 1944 and 1945.

Payment of the deficiencies was made to the Collector under protest and timely claims for refund were filed by the plaintiff, which claims were disallowed by the Commissioner of Internal Revenue. This suit is brought for $80,614.62, the adjusted deficiency and the alleged overpayment plus interest.

The Wage Stabilization Act, 50 U.S.C.A. Appendix, §§ 961–971 inclusive, provides:

Section 961. "In order to aid in the effective prosecution of the war, the President is authorized and directed * * * to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living * * *. The President may, ex-

cept as otherwise provided in this Act, thereafter provide for making adjustments with respect to prices, wages, and salaries, to the extent that he finds necessary to aid in the effective prosecution of the war or to correct gross inequities * * *."

Section 962. "The President may, from time to time, promulgate such regulations as may be necessary and proper to carry out any of the provisions of this Act; and may exercise any power or authority conferred upon him by this Act through such department, agency, or officer as he shall direct. * * *"

Section 965 (a). "No employer shall pay, and no employee shall receive, wages or salaries in contravention of the regulations promulgated by the President under this Act. The President shall also prescribe the extent to which any wage or salary payment made in contravention of such regulations shall be disregarded by the executive departments and other governmental agencies in determining the costs or expenses of any employer for the purposes of any other law or regulation."

The Act of October 2, 1942, was immediately followed by the promulgation by the President on October 3, 1942, of Executive Order 9250, reading as follows: "In order to effectuate the purposes and provisions of this Order and the Act of October 2, 1942 * * * any wage or salary payment made in contravention thereof shall be disregarded by the Executive Departments and other governmental agencies in determining the costs or expenses of any employer for the purpose of any law or regulation, including the Emergency Price Control Act of 1942 * * * or any maximum price regulation thereof, or for the purpose of calculating deductions under the Revenue Laws of the United States or for the purpose of determining costs or expenses under any contract made by or on behalf of the Government of the United States." 50 U.S.C.A. Appendix, § 901, Title III, Sec. 4. This order created the Office of Economic Stabilization, to be headed by an Economic Stabilization Director who was empowered to formulate and develop a comprehensive national economic policy relating to the control of wages and all related matters for the purpose of preventing avoidable increases in the cost of living and to facilitate the prosecution of the War and, to that end, to issue directives to the Federal departments and agencies concerned.

Pursuant to the provisions of Executive Order 9250 the Director promulgated regulations and amendments thereto by which the National War Labor Board was given authority to determine whether any wage payments are made in contravention of the Act, rulings, orders or regulations promulgated thereunder. The regulations also provided that any determination made by the Board that payments of wages were in contravention of the Act, rulings, orders or regulations promulgated thereunder shall be conclusive upon all executive departments and agencies of the Government in determining the costs or expenses of any employer for the purpose of any law or regulation or for the purpose of calculating deductions under the revenue laws of the United States and specifically provided that any determination of the Board made pursuant to the authority conferred on it shall be final and shall not be subject to review by the Tax Court of the United States or by any court in any civil proceedings. (Sec. 4001.2(a)).

Section 4001.15 of the regulations of the Director, as amended, provides in subsection (a) that if any wage or salary payment is determined by the Board to have been made by an employer in contravention of the Act or the regulations, rulings or orders promulgated thereunder, the entire amount or an amount reduced as provided in subsection (b) "in the light of such extenuating circumstances as are found to be present in each case and all other pertinent considerations," shall, upon certification by the Board to the Commissioner of Internal Revenue, be disregarded for the purpose of calculating deductions under the revenue laws of the United States. Subsection (c) of Section 4001.15 further provides that any such determination by the Board shall be conclusive and that the Commissioner of Internal Revenue upon receipt of such certifications shall disre-

gard the amount thus certified in determining deductions under the revenue laws of the United States.

■ It is well settled that the court has no right to review and redetermine questions of fact considered and lawfully determined by an administrative authority.[1] The complaint in this case charges error with respect to three alleged questions of law. First, it is claimed that the suppliers were independent contractors as a matter of law so that the Board had no authority with respect to payments made to them by plaintiff. Second, the complaint alleges that the Board exceeded its authority by basing its recommendation to the Collector on the total amount paid to such suppliers rather than the amount paid contrary to the provisions of the Stabilization Act—that is, the Board construed what was meant as a civil sanction to be a penal provision. Third, the complaint challenges the constitutionality of that section if correctly construed by the Board.

■ With respect to the first question raised, the plaintiff does not deny that the Board had the right to make an initial determination that a given relationship was an employer-employee relationship for the purpose of the Stabilization Act, even though the parties chose to give that status some other name. Its contention, on the contrary, is that the question of whether or not these suppliers were employees of the plaintiff corporation is one of fact, but that it is a peculiar fact known under the doctrine of Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, as a "jurisdictional fact," which by its nature entitled plaintiff to a trial de novo on the question in this court.

The decision in Crowell v. Benson involved the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, granting compensation to such workers, regardless of fault, for personal injury sustained on navigable waters in the course of maritime employment. The Supreme Court allowed a trial de novo on the two "jurisdictional facts" of employment and locality. The decision does not state the criteria by which these "jurisdictional facts" are to be distinguished from the many other facts equally necessary to the applicability of a statute to a particular case. It has never been extended or reaffirmed by the Supreme Court; later cases have, however, severely limited its scope.[2] Judge Learned Hand has distinguished it from the bulk of cases involving administrative agencies, such as the one at bar, by asserting that its doctrine is applicable only to cases involving private controversies and not those in which the Government is itself

---

1. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. A distinction between questions of fact and law is recognized in cases involving review of administrative proceedings; thus, in Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626, the court said: "If the action rests upon an administrative determination—an exercise of judgment in an area which Congress has entrusted to the agency—of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so. But if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."

2. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028. Each of these cases involved an administrative finding that plaintiffs fell within the class of persons to whom the statute applied; in each case the court refused a judicial review of that finding. See too Justice Frankfurter's concurring opinion in Estep v. United States, 327 U.S. 114, 142, 66 S.Ct. 423, 437, 90 L. Ed. 567: "This argument revives * * all the casuistic difficulties spawned by the doctrine of 'jurisdictional fact.' In view of the criticism which that doctrine, as sponsored by Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, brought forth and of the attritions of that case through later decisions, one had supposed that the doctrine had earned a deserved repose."

a party. Kreutz v. Durning, 2 Cir., 69 F.2d 802.

In any event, I am of the opinion that the determination that the suppliers in this case were employees and not independent contractors is not one of jurisdictional fact and, under the pattern of Supreme Court decisions since Crowell v. Benson, the plaintiff is not entitled to a new hearing on this issue. The employer-employee relationship is necessary to establish the statutory power of the Board in this case, but such "statutory fact" questions have been treated by the same rule evolved by our highest court to test the validity of ordinary fact findings, namely, the "substantial evidence" rule. Plaintiff does not deny that there was evidence upon which the Board could make a finding; it asks for a new determination. The court is without jurisdiction to try this question *de novo*.

■ The complaint also disputes the Board's interpretation of Section 5(a) of the Act of October 2, 1942, supra. The issue raised involves the broad problem of the nature of the power actually given to the President and to the Board. Plaintiff claims that defendant had no power to make the kind of recommendation that was made in this case. This issue is properly before the court. It is, however, my opinion that the plaintiff's contention is without merit.

A reading of Section 5(a) of the Act discloses that the power to prescribe the extent to which an unlawful payment of wages or salaries shall be disregarded by other executive agencies was given by Congress in order to implement the mandate set forth in that section. "No employer shall pay, and no employee shall receive wages or salaries in contravention of the regulations promulgated by the President under this Act." The section has been interpreted and applied administratively to provide penalties for its violation. Although the Act was twice extended by Congress,[3] no change was made in the wording of this provision.

■ Plaintiff further contends that such an interpretation makes the statute unconstitutional as providing for an "excessive fine and cruel and unusual punishment contrary to the Eighth Amendment to the Constitution of the United States." It is true that the statute makes possible a severe penalty in order to insure its proper enforcement. But the penalty here in issue is not criminal in character and therefore is not open to such a charge; the sanction here involved, as the form of the present action shows, is civil in nature, and was provided in addition to criminal sanctions for violation of the Stabilization Act. 50 U.S.C.A. Appendix, § 971.

It is well settled that Congress has the power to provide civil sanctions as an aid to effecting its purposes in fields in which it has constitutional power to act, Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; McDowell v. Heiner, D.C., 9 F.2d 120, affirmed 3 Cir., 15 F.2d 1015, and, further, that it can delegate that power to administrative agencies. Passavant v. United States, 148 U.S. 214, 13 S.Ct. 572, 37 L.Ed. 426. The Supreme Court in upholding the constitutionality of the Alien Immigration Act of March 3, 1903, 32 Stat. 1213, in Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013, reaffirmed with emphasis this exclusive authority in Congress. Mr. Justice White, later Chief Justice, writing for the court, said: "In accord with * * * settled judicial construction the legislation of Congress from the beginning, not only as to tariff, but as to internal revenue, taxation, and other subjects, has proceeded on the conception that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations, and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power." In view of the broad power to pro-

3. Joint Resolution of June 30, 1945, c. 214, 59 Stat. 306, extending the Act to June 30, 1946, and Joint Resolution of July 25, 1946, c. 671, 60 Stat. 664, extending the Act to June 30, 1947.

vide civil sanctions resident in Congress, the sanction invoked against plaintiff by the War Labor Board is not violative of the Federal Constitution.

Defendant's motion to dismiss is granted and an order accordingly may be presented for signature.