**NEUSTEIN v. MITCHELL et al., Constituting United States Civil Service Commission.**

District Court, S. D. New York.

Jan. 7, 1942.

Harold L. Herzstein, of New York City, for plaintiff.

L. V. Meloy, of Washington, D. C., for defendant United States Civil Service Commission.

KNOX, District Judge.

This case involves Section 12 of the Hatch Political Activities Act of July 19, 1940, 54 Stat. 767, 18 U.S.C.A. § 61*l* amending the prior act of the same name of August 2, 1939, "to prevent pernicious political activities," 53 Stat. 1147, 18 U.S.C.A. §§ 61–61k.

The facts presented by the instant petition, affidavit, order to show cause, amended petition, bill of complaint, and answer, are simple and, for the purposes of the present application, undisputed.

From May 17, 1938 to October 31, 1941, the plaintiff was a member of the Unemployment Insurance Appeal Board of the State of New York. As such, his engagement was in connection with an activity financed in whole or in part by loans and grants made by the United States or one of its agencies. On September 15, 1941, the defendants, as members of and constituting the United States Civil Service Commission, by serving a Letter of Charges, instituted a proceeding before itself, wherein plaintiff was named as the respondent.

The said Letter of Charges averred, inter alia, "that since July 19, 1940 the said Irving D. Neustein has been, and now is, taking an active part in political management in that he is sponsoring, aiding, and abetting the election of party committeemen in an election to be held in the Sixth Assembly District, County of New York, State of New York * * * that since July 19, 1940, the said Irving D. Neustein has been, and now is, taking an active part in a political campaign in that he is sponsoring, aiding and abettting the election of party committeemen in the Sixth Assembly District, County of New York, State of New York, which said committeemen are pledged to select and/or elect the said Irving D. Neustein as their leaderman, which said office is a political party office."

On September 29, 1941, plaintiff filed an answer to the Commission's Letter of Charges, admitting certain averments, but denying the allegations of political activity.

On October 6, 1941, plaintiff sent a letter, effective as of October 31, 1941, to the Governor of the State of New York, whereby he tendered his resignation as a member of the Unemployment Insurance Appeal Board. It appears that at some time prior to October 31, 1941, the resignation was accepted.

The Commission admits, for present purposes, that plaintiff ceased to be a member of the Board on October 31, 1941. It, nevertheless, alleges that it had no knowledge of plaintiff's resignation and its acceptance prior to November 12, 1941. That date had been appointed for a hearing upon the Commission's charges against Neustein. As presently will appear, in the view that I take of the case, it is unimportant whether or not the Commission had such knowledge in advance of November 12, 1941.

The above mentioned hearing was commenced at the scheduled time and place, whereupon the plaintiff served upon the hearing examiner, an order of this court to show cause why the Commission should not be enjoined from proceeding further with the hearing on the Letter of Charges.

In his amended pleadings, plaintiff seeks the alternative remedies of a declaratory judgment and writ of prohibition. The issues raised by the order to show cause have been argued in briefs submitted by the plaintiff and the Commission.

It will be readily observed from the foregoing that the sole question for determination is whether, under Section 12 of the Hatch Political Activities Acts, an "officer or employee" of the type therein described, and having and holding such status (1) during and throughout the entire period of the alleged violations of the statute, as well as (2) at the time of the service of the Commission's Letter of Charges concerning such violations, can, nevertheless, invoke an alleged jurisdiction in this court to oust the Commission of authority, in limine, to hold a hearing with respect to such violations by the expedient of resigning and ceasing to be an "officer or employee" (3) prior to the date set by the Commission for such hearing.

Plaintiff contends that because he no longer is an "officer or employee" of the Unemployment Insurance Appeal Board, the Commission is without jurisdiction to continue the hearing against him. The Commission, on the other hand, argues that the phrase "officer or employee," as used in Section 12 of the Hatch Act, "relates back" to political activities of persons while in the employment of a State or local agency receiving federal funds.

Subdivision (c) of Section 12 of the statute is as follows: "(c) Any party aggrieved by any determination or order of the Commission under subsection (b) may, within thirty days after the mailing of notice of such determination or order, institute proceedings for the review thereof by filing a written petition in the district court of the United States for the district in which such officer or employee resides; but the commencement of such proceedings shall not operate as a stay of such determination or order unless (1) it is specifically so ordered by the court, and (2) such officer or employee is suspended from his office or employment during the pendency of such proceedings. A copy of such petition shall forthwith be served upon the Commission, and thereupon the Commission shall certify and file in the court a transcript of the

record upon which the determination or the order complained of was made. The review by the court shall be on the record entire, including all of the evidence taken on the hearing, and shall extend to questions of fact and questions of law. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence may materially affect the result of the proceedings and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Commission, the court may direct such additional evidence to be taken before the Commission in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings of fact or its determination or order by reason of the additional evidence so taken and shall file with the court such modified findings, determination, or order, and any such modified findings of fact, if supported by substantial evidence, shall be conclusive. The court shall affirm the Commission's determination or order, or its modified determination or order, if the court determines that the same is in accordance with law. If the court determines that any such determination or order, or modified determination or order, is not in accordance with law, the court shall remand the proceeding to the Commission with directions either to make such determination or order as the court shall determine to be in accordance with law or to take such further proceedings as, in the opinion of the court, the law requires. The judgment and decree of the court shall be final, subject to review by the appropriate circuit court of appeals as in other cases, and the judgment and decree of such circuit court of appeals shall be final, subject to review by the Supreme Court of the United States on certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U.S.C., 1934 edition, title 28, secs. 346 and 347) [sections 346 and 347 of Title 28]. If any provision of this subsection is held to be invalid as applied to any party with respect to any determination or order of the Commission, such determination or order shall thereupon become final and effective as to such party in the same manner as if such provision had not been enacted."

Bearing in mind these provisions of the statute, the decision of the Circuit Court of Appeals in Chamber of Commerce v. Fed-

eral Trade Commission, 8 Cir., 1922, 280 F. 45, 47, is precisely applicable. That was a suit filed originally in the Circuit Court. Petitioners therein were certain respondents against whom the Commission had previously filed a complaint. The latter complaint alleged that the Commission had reason to believe, from a preliminary investigation made by it, that these petitioners were violating the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. Petitioners thereupon made and submitted a number of motions which, upon hearing before the Commission, were denied by interlocutory order duly made and entered.

The preliminary motions referred to raised the objection, inter alia, that "(1) The Commission is without jurisdiction both of parties and of subject-matter." Accordingly, petitioners prayed that no issue of fact be joined or evidence received as to the allegations contained in certain paragraphs of the complaint, and that the entire proceeding be dismissed.

The court dismissed the petition for want of jurisdiction, and in its opinion made the following observations: "The writ, as asked, partakes largely of the nature of a writ of prohibition * * *. *What is really sought by petitioners is that this court should halt inquiry at the threshold, exercising, in effect, the powers of a court of original jurisdiction, in which a cause is pending, to rule in limine upon the propriety of the action and whether it should proceed further.* * * * But it must be remembered that this court has no original jurisdiction of this nature. Its functions, under the act before us, are confined to a review of certain acts of the Federal Trade Commission, which are specifically defined by the Congress. * * * If this court is to exercise plenary power and control in determining at the outset what party shall be dealt with, what investigation shall be made, and what recommendation submitted, then it has, in effect, been constituted an original trial tribunal of controversies of this nature. This was in no wise contemplated, nor would it comport with the legitimate practical functions of a court of this nature. * * * We do not think that this language [Section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49] was intended to give the District Court jurisdiction over orders such as that now before us. It is our judgment that *neither the District Court nor this court* has power un-

der the act to interfere with the investigation and inquiry of the Commission, involving the taking of testimony and the finding of facts essential to the making of such an order as shall ultimately be passed upon by the Circuit Court of Appeals. * * * *In cases arising under this law, injunctions to halt the taking of testimony have been uniformly denied.* * * * To halt this investigation before testimony is taken would be an invasion of the powers of the legislative and executive branches of the government. The real gist of the complaint here is that it is claimed, and with plausibility, that the chief petitioner is not subject to the jurisdiction of the * * * Commission. * * * *It may be desirable that the law should provide for a preliminary review of questions of jurisdiction either by the Circuit Courts of Appeals or by the District Courts; but, in the absence of such provision, we cannot assume that power."* (Italics supplied.)

This decision has been very frequently referred to in judicial opinions, and has been twice cited with approval by the Supreme Court. Federal Trade Commission v. Eastman Kodak Co., 274 U.S. 619, 623, 47 S.Ct. 688, 71 L.Ed. 1238; Arrow-Hart & Hegeman Electric Co. v. Federal Trade Commission, 291 U.S. 587, 595, 54 S.Ct. 532, 78 L.Ed. 1007.

■ The conclusion as to the lack of jurisdiction in this court to enjoin the Civil Service Commission at this stage of its proceedings is further fortified by the express terms of the statute under which the Commission is acting in the instant case. Section 12, subdivision (b) of the Hatch Act, reads as follows: "(b) If any Federal agency charged with the duty of making any loan or grant of funds of the United States for use in any activity by any officer or employee to whom the provisions of subsection (a) are applicable has reason to believe that any such officer or employee has violated the provisions of such subsection, it shall make a report with respect thereto to the United States Civil Service Commission (hereinafter referred to as the "Commission"). Upon the receipt of any such report, or upon the receipt of any other information which seems to the Commission to warrant an investigation, the Commission shall fix a time and place for a hearing, and shall by registered mail send to the officer or employee charged with the violation and to the State or local agency employing such officer or employee a notice setting forth a summary of the alleged violation and the time and place of such hearing. At such hearing (which shall be not earlier than ten days after the mailing of such notice) either the officer or employee or the State or local agency, or both, may appear with counsel and be heard. After such hearing, the Commission shall determine [1] whether any violation of such subsection has occurred and [2] whether such violation, if any, warrants the removal of the officer or employee by whom it was committed from his office or employment, and shall by registered mail notify such officer or employee and the appropriate State or local agency of such determination. [3] *If in any case the Commission finds that such officer or employee has not been removed from* his office or employment within thirty days after notice of a determination by the Commission that such violation warrants his removal, or that he *has been so removed and has subsequently (within a period of eighteen months) been appointed to any office or employment in any State or local agency in such State, the Commission shall make and certify to the appropriate Federal agency an order requiring it to withhold from its loans or grants to the State or local agency to which such notification was given an amount equal to two years' compensation at the rate such officer or employee was receiving at the time of such violation;* except that in any case of such a subsequent appointment to a position in another State or local agency which receives loans or grants from any Federal agency, such order shall require the withholding of such amount from such other State or local agency * * *. Notice of any such order shall be sent by registered mail to the State or local agency from which such amount is ordered to be withheld. The Federal agency to which such order is certified shall, after such order becomes final, withhold such amount in accordance with the terms of such order. * * *"

■ Relying upon the express terms of Section 12(b) of the statute—set forth in italics in that portion of the statute quoted above—the Commission takes the position that it is in duty bound to carry out the mandate of Congress and to continue its proceedings to a finding of facts. If such facts warrant a conclusion that plaintiff violated the provisions of the statute and that such violations warrant removal, the

Commission proposes to hold the findings in abeyance for eighteen (18) months, and in the event of plaintiff's re-employment by a State or local agency, financed in whole or in part by federal funds, to certify such findings to the appropriate federal agency for the purpose of withholding a sum equal to the compensation received by the employee for a period of two years.

Having regard not only to the terms of the statute, but also to its general structure, I am of opinion that this position of the Commission is well taken, and must be sustained.

It may not be amiss to state that, were plaintiff's construction of the statute to be followed, the purpose of the law "to prevent pernicious political activities" on the part of an officer or employee of a State or local agency, financed in whole or in part by federal funds, an offending person, through the medium of his resignation, could defeat the object of the statute. To borrow the language of a recent pronouncement of the Supreme Court, Nardone v. United States, 1939, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307: "A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose."

The fallacious assumption of petitioner in his present application is the thought that the proceedings initiated by the Commission under the Hatch Act partake merely of the nature of a private lawsuit, so to speak, between the Commission and himself. The fact is, as the title of the Letter of Charges served upon petitioner makes plain, that the said proceedings are "Before the United States Civil Service Commission in the Matter of Irving D. Neustein *and the State of New York.*" Section 12, subdivision (b) of the statute, already quoted, demonstrates most clearly and forcefully that the latter provision is not a mere matter of form, but goes, rather, to the very substance of the entire statute. *The State of New York,* it may be said

with complete accuracy, in view of Section 12(b), *is the real party in interest.*

This consideration, together with many others which I do not find necessary to spell out, distinguishes the instant situation from that before the Supreme Court in Jones v· Securities and Exchange Commission, 1936, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015. In that case, the opinion of the court expressly pointed out at page 23 of 298 U.S., at page 660 of 56 S.Ct., 80 L. Ed. 1015, that "an abandonment of the application was of no concern to anyone except the registrant."

The facts revealed by the instant record make more apposite the following language of Mr. Justice Cardozo, concurred in by Brandeis and Stone, JJ., dissenting in the case last cited: "I am persuaded that * * * the commission had abundant reasons for maintaining jurisdiction; and that notice of withdrawal did not nullify the writ. * * * When wrongs such as these have been committed or attempted, they must be dragged to light and pilloried. To permit an offending registrant to stifle an inquiry by precipitate retreat on the eve of his exposure is to give immunity to guilt; to encourage falsehood and evasion; to invite the cunning and unscrupulous to gamble with detection. * * * The statute and its sanctions become the sport of clever knaves."

No argument has been made as to the effect, if any, of petitioner's having filed with the Commission on September 29, 1941 —on this date, admittedly having been an "officer or employee"—an answer to its Letter of Charges, said answer going to the merits of the accusations made against him. For this reason, and in view of what I have already written, there is no need to pass upon the question as to whether petitioner, by appearing generally, voluntarily submitted to the jurisdiction of a quasi-judicial tribunal.

The amended petition and bill of complaint will be dismissed.