## STATE OF OHIO v. UNITED STATES CIVIL SERVICE COMMISSION.

Civ. No. 644.

District Court, S. D. Ohio, E. D.
April 22, 1946.

UNDERWOOD, District Judge.

This is a proceeding instituted by the State of Ohio to review and set aside an order entered by the United States Civil Service Commission under Section 12(b) of the Hatch Act, 54 Stat. 767, 18 U.S. C.A. § 61*l*(b) directing the Social Security Board of the Federal Security Agency to withhold from its loans or grants of federal funds to the Ohio Bureau of Unemployment Compensation, an agency of the State of Ohio, on account of said Bureau, the sum of $7,200. The State of Ohio, deeming itself "aggrieved" by said order, seeks review thereof in this Court under and pursuant to the terms of Section 12(c) of the Hatch Act, 18 U.S.C.A. § 61*l*(c).

Harry J. Patterson, after the passage of Section 12 of the Hatch Act, was employed by the State of Ohio as manager of the Cincinnati Office of the Bureau of Unemployment Compensation of Ohio, at an annual salary of $3,600. His principal employment was in connection with an activity financed in whole or in part by loans or grants made by the United States or by a federal agency, and by the terms of the Hatch Act, he was forbidden to engage in political activity. Sec. 12(a), Hatch Act, 18 U.S.C.A. § 61*l*(a).

The United States Civil Service Commission found that Patterson, while so employed, engaged in prohibited political activity, and on December 15, 1941, promulgated a final order finding Patterson guilty of violating Section 12(a) of the Act and that such violation warranted his removal as an employee of the Bureau of Unemployment Compensation of the State of Ohio. Notice of such determination was given to Patterson and the State of Ohio by registered mail. Upon failure by the State of Ohio or Patterson to petition for review, the order became final thirty days from the mailing of notice.

On January 1, 1942, the employment of Patterson with the Bureau of Unemployment Compensation of Ohio was terminated. On February 11, 1942, Patterson was employed by the State of Ohio as coordinator of the Council of Defense of the State of Ohio, in charge of automobile

Hugh S. Jenkins, Atty. Gen., State of Ohio, E. G. Schuessler, Office of Atty. Gen., of Columbus, Ohio, and Isadore Topper, Sp. Counsel to Atty. Gen., for State of Ohio, petitioner.

Francis Shea, Asst. Atty. Gen. of United States, Lawrence V. Meloy, Atty., U. S. Civil Service Commission, of Washington, D. C., Sidney J. Kaplan, Sp. Asst. to U. S. Atty. Gen., Jerome C. Strumpf, Atty., Department of Justice, of Washington, D. C., and Ray J. O'Donnell, U. S. Atty., of Columbus, Ohio, for United States Civil Service Commission, respondent.

and sugar rationing. On June 29, 1942, Patterson was designated Secretary of the Evacuation Committee of the Council.

On July 16, 1942, the attorney for the Civil Service Commission petitioned the Commission for an order to show cause why the Social Security Board should not be directed to withhold from the Bureau of Unemployment Compensation of Ohio, a sum equal to two years compensation at the rate received by Patterson when employed by that Bureau, on the ground that his reemployment by the State of Ohio Council of Defense occurred within eighteen months of his discharge by the Bureau of Unemployment Compensation. On July 16, 1942, the Commission issued an order to show cause addressed to Patterson and the State of Ohio.

The hearing on the order to show cause was held in Columbus, Ohio, before the Chief Hearing Examiner of the Commission on July 31, 1942. Patterson and the State of Ohio appeared and participated in the hearing. On September 24, 1942, the Examiner rendered his preliminary report to the Commission; copies thereof were served on the State of Ohio and Patterson. Thereafter the State filed a brief with the Commission.

On January 4, 1943, the Commission announced its opinion finding that Patterson had been reemployed by an executive agency of the State of Ohio within eighteen months of the date of his removal as an employee of the Bureau of Unemployment Compensation, contrary to the provisions of Section 12(b) of the Hatch Act and directing that a withholding order to the Social Security Board be entered and certified. On the same day such an order was made; on January 5, the order was duly certified to the Social Security Board. On January 28, 1943, the State of Ohio filed its petition in this case to review the withholding order of the Commission. The State of Ohio bases its cause of action upon three principal questions; first, that the Council of Defense, the second employer of Patterson, was a legislative agency and not an executive or departmental agency; second, that the agency first employing Patterson does not now receive federal grants in connection with

the activity in which he was employed; and third, that if the Hatch Act requires the withholding ordered, it is an interference with the sovereign powers of the State and therefore violative of the Tenth Amendment to the Constitution of the United States. These specific questions will be discussed in the order in which they have been stated.

As to the first question, it is the contention of the State, that the facts of this case do not bring the reemployment of Patterson within the withholding provisions of Sec. 12(b) of the Hatch Act, 18 U.S.C.A. § 61$l$ (b). It is asserted that the Council of Defense of the State of Ohio was not a "State or local agency"; that is, it was a legislative agency rather than an agency of the executive branch or any department thereof. The provision of the statute is against reemployment in a "State or local agency" of such State, 18 U.S. C.A. § 61$l$(b), and "State or local agency" is defined as meaning, "the executive branch of any State * * * or any agency or department thereof." 18 U.S. C.A. § 61$l$(f) (1).

The statutory provisions creating the Council and defining its powers and duties are the best guide as to its character, for it is within this statutory framework that the Council had its origin and existence. An examination of the statutes makes it difficult to understand how they could have been more clearly written to indicate the intention that the Council was to be an arm of the executive branch of the state government.

By express terms of the law, the very existence of the Council was left dependent upon the discretion of the Governor; it was provided that he might "create", "suspend", "dissolve", or "reestablish it". Likewise, the Governor had authority to prescribe its powers and duties within the very general standards fixed by the legislature. Sec. 5286, Ohio G.C. The Governor was made chairman; six members were appointed by the Governor, and eight executive officials appointed by the Governor were made ex officio members, Sec. 5287, Ohio G.C. Clearly these provisions indicate an agency designed to be a part of the executive branch and owing only

its legal creation to the legislature. Any other theory is inconsistent with the constitutional departmental theory of the state government.

█ The Council exercised no powers which an executive agency might not properly exercise. Every administrative body has rule making power to the extent of governing its procedure and activities within statutory limits. Morgan v. T. V. A., 6 Cir., 115 F.2d 990, 994. It may be added that the power of the Council to make rules, orders and regulations, having the force and effect of law, Sec. 5288(b), Ohio G.C., is no longer regarded as a strange power to be possessed by an administrative agency. It may also be added, that the only actual place of the Council in the legislative field is "to report to the governor its recommendations for legislation or other appropriate action as it may deem necessary." Sec. 5288(h), Ohio G.C. Although even the chief executive, makes recommendation to the legislature for legislation, the Council could make them only to the chief executive.

█ It is the conclusion of this Court that the Council of Defense of the State of Ohio must be held to be a "State or local agency", within the intent and meaning of Sec. 12(b) of the Hatch Act, and within the terms of Sec. 61l(b), 18 U.S. C.A.

The second question for determination is whether or not a withholding order can be made where the agency in which Patterson was employed prior to his discharge for violation of the Hatch Act, does not now receive federal grants in connection with the activities in which he was employed. The State of course maintains that a withholding order is not authorized under the circumstances. The terms of the Act are specific in this regard. The prohibition of Sec. 12(a) of the Hatch Act is placed upon an: "officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency." The Bureau of Unemployment Compensation of the State of Ohio, as Patterson's employer, qualified under that provision, and Patterson likewise met the qualifications as an "officer or employee".

█ As to the withholding provision of Section 12(b) of the Act, it is provided that notice shall be given to the "State or local agency" employing the offending person. It is further provided that: "If in any case the Commission finds that such officer or employee * * * has been so removed and has subsequently (within a period of eighteen months) been appointed to any office or employment in any State or local agency in such State, the Commission shall make and certify to the appropriate Federal agency an order requiring it to withhold from the loans or grants to the State or local agency to which such notification was given an amount equal to two years' compensation at the rate such officer or employee was receiving at the time of such violation * * *."

There is no qualification in the statute which would permit the construction urged by the State, it is sufficient, the other requirements being present as in the instant case, that the agency against which the withholding order is issued, be, at the time of the order, receiving federal loans or grants. It is immaterial that the activities in which the offender was employed may have been altered or discontinued. It is equally immaterial that the position or office formerly held by the offender may have been abolished.

The Court therefore holds that the withholding order was justified by the provision of the Act as against this particular contention of the State. The exceptions which the State seeks to read into the Act, Congress did not see fit to write into it and the Court is without power to do so by judicial construction.

The third, and possibly the most important question presented is the question of whether or not the provisions of the Act authorizing withholding in case the offender is reemployed by the "State or local agency" within the eighteen-month limit, violates the Tenth Amendment to the Constitution of the United States. This Amendment reads as follows: "The powers not delegated to the United States by

the Constitution, nor prohibited to the States, are reserved to the States respectively, or to the people."

The State contends that as the Hatch Act has been applied in the present instance, it violates the Amendment by restricting the right of the State to select its own employees without interference by the Federal Government. It is further argued, that the withholding of the funds in question operates as such restriction and therefore as an infringement on the reserve powers of the states.

 The funds involved in the present case are federal funds, raised and collected by the taxing power of Congress and paid into the United States Treasury, to be appropriated therefrom by Congress acting under its power to appropriate federal money. The State has neither right nor interest in such funds until Congress has by appropriation made them available. That the power to appropriate federal funds has been exclusively entrusted to Congress is too well established to be questioned or argued. It is equally well settled that Congress has the power to attach to its appropriations any legitimate conditions.

██ Now by the exercise of the power to appropriate federal funds, Congress seeks through the medium of the Hatch Act, to prohibit pernicious political activity by those who are paid in part or wholly by federal money. The power of the Federal Government to control objectionable official conduct on the part of its employees and officers was upheld by the Supreme Court of the United States in United States v. Wurzbach, 280 U.S. 396, quoting from pages 398, 399, 50 S.Ct. 167, at page 168, 74 L.Ed. 508: "But the power of Congress over the conduct of officers and employees of the Government no more depends upon authority over the ultimate purposes of that conduct than its power to punish the use of the mails for a fraudulent purpose is limited by its inability to punish the intended fraud. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706. It hardly needs argument to show that its officers and employees neither shall exercise nor be subjected to pressure for money for political purposes, upon or by others of their kind, while they retain their office or employment. If argument and illustration are needed they will be found in Ex Parte Curtis, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232; United States v. Curtis, C.C., 12 F. 824. See United States v. Thayer, 209 U.S. 39, 42, 28 S.Ct. 426, 52 L.Ed. 673."

The reason for the pronouncement is not difficult to find. "If contributions from those in public employment may be solicited by others in official authority", said Chief Justice Waite in Ex parte Curtis, 106 U.S. 371, 374, 1 S.Ct. 381, 384, 27 L.Ed. 232, "it is easy to see that what begins as a request may end as a demand, and that a failure to meet the demand may be treated by those having the power of removal as a breach of some supposed duty, growing out of the political relations of the parties."

██ It is quite apparent that when Congress sought to prevent "pernicious" political activity by its officers and employees, it was exercising a right recognized by the Courts for many years. Therefore the purpose sought to be accomplished was legitimate and well within the powers of Congress to seek to accomplish. The question remains, however, whether or not a reasonable exercise of that power was made in the Hatch Act as it applies to the circumstances in the present case. "If the end be legitimate, and within the scope of the constitution, all the means which are appropriate, which are plainly adapted to that end, and which are not prohibited, may constitutionally be employed to carry it into effect." McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (Syl.).

In seeking to exercise its undoubted power to control the conduct of federal officers and employees, Congress has offered to the States an inducement not to reemploy offenders, in particular capacities, for a period of eighteen months. There is a wide difference between inducement offered to the States, and coercion upon the States. In upholding certain provisions of the Social Security Act, 42 U.S.C.A. § 1101 et seq., providing for the rebate of taxes for specified conduct, the Supreme Court held: "Every rebate

from a tax, when conditioned upon conduct, is in some measure a temptation; but motive or temptation is not equivalent to coercion." Steward Machine Co. v. Davis, Syl. 4(4), 301 U.S. 548, 549, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. That statement applies just as well to the present case and the present facts. It does no violence to the principle expressed, to rephrase it thus: "Every loan or grant, when conditioned upon conduct, is in some measure a temptation; but motive or temptation is not equivalent to coercion."

In the instant case, no compulsion is laid upon the State; there is no coercion. The State is not prevented, forbidden, enjoined, prohibited, or compelled to refrain from employing any person it may choose to employ in any capacity in which it may desire to employ him. In short, the sovereign power of the State to employ any person it may choose to employ is not denied nor infringed. That right was reserved to the State in the Constitution and it is not destroyed by the provisions of the Hatch Act. An inducement not to employ certain persons in certain capacities within a very limited time, is offered, yes; but mere inducement without compulsion or coercion does not constitute a usurpation of the powers of the State. Without the provision as to immediate re-employment by the State, the Hatch Act would mean but little. Ordinary logic must lead to the conclusion that the Act, as applied to the instant case, will have far less effect on the quasi sovereign independence of a State than the unrestricted use of federal office within the State in the promotion of pernicious political activities.

This same question of whether or not the Act infringes the rights reserved to the States by the Tenth Amendment has been decided by other courts. The contention was given but short consideration in Neustein v. Mitchell, D.C., 52 F.Supp. 531, 532. The court disposed of the issue with one short paragraph: "The constitutional question requires little consideration. Congress had power to attach proper conditions to loans and grants of federal funds. One of the conditions imposed by Section 12(a) of the Hatch Act was that no 'officer or employee' of any state or local agency financed by federal 'loans or grants' should take 'any active part in political management or in political campaigns.' This clearly was a proper condition to the loans or grants to the state; and it is not open to the charge of coercion on the state. Steward Mach. Co. v. Davis, 301 U.S. 548, 585, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. Under the Hatch Act the state is not even under compulsion to discharge an employee who has violated the statute. If the state wishes to retain an employee, it may do so; the only penalty is the withholding of federal loans or grants equal to two years' compensation of the offending employee. Section 12(a) of the Hatch Act is valid. See Stewart v. United States Civil Service Commission, D.C., 45 F.Supp. 697."

As indicated in the foregoing quotation, the holding in Stewart v. United States Civil Service Commission, D.C., 45 F. Supp. 697, was to the same effect. See also State of Oklahoma v. United States Civil Service Commission, D.C., 61 F. Supp. 355; Neustein v. Mitchell, D. C., 42 F.Supp. 839.

■■■ This Court finds that within the facts of the present case, the Hatch Act does not violate the Tenth Amendment to the Constitution of the United States.

■■■ This leaves but one question for decision. It has been contended that the State does not have sufficient interest in the subject matter of this case to maintain the action. Although it is perhaps unnecessary to decide this question, in view of the fact that the Court has decided the issues upon their merits, against the contentions of the State. It is, however, the opinion of this Court that the State, as a matter of law, does have sufficient interest to raise the questions presented.

The Withholding Order of January 4, 1943, will be affirmed. Entry accordingly.

The findings of fact and the conclusions of law attached hereto are made a part of this opinion.

### Conclusions of Law

a. That it was not error to overrule the motion to discharge the order to show

782

cause why the Withholding Order should not be made.

b. That the Ohio State Council of Defense is an agency of the Executive Branch of the State of Ohio.

c. That Harry J. Patterson's employment by the Ohio State Council of Defense was within the prohibition of Section 12(b) of the Hatch Act, 18 U.S.C.A. § 61*l* (b).

d. That Section 12 of the Hatch Act is constitutional insofar as it has application to the facts of this case.

e. That the State of Ohio has legal standing to maintain this action.

f. That the State of Ohio had the choice of employing Harry J. Patterson, in the capacity in question and suffering the withholding of the funds provided in the Withholding Order; or of not employing him in such capacity and receiving the funds. There was merely inducement, and not coercion in this choice.

g. That the Hatch Act does not, and cannot affect the moneys standing to the credit of the State of Ohio in the Unemployment Insurance Fund. These funds belong to the State and are held in trust for it by the Secretary of the Treasury under Title IX, Section 904, of the Social Security Act, 42 U.S.C.A. § 1104.

h. That it was not error for the United States Civil Service Commission to make the Withholding Order, directed to the Social Security Board of the Federal Security Agency of the State of Ohio. Said Order and Determination was not only authorized, but was required under the law.

Findings of Fact

1. That the United States Civil Service Commission, pursuant to Section 12(b) of the Hatch Act, 54 Stat. 767, 18 U.S.C.A. § 61*l* (b), held a hearing, at which, having been duly and legally notified, both the State of Ohio and Harry J. Patterson appeared through their respective counsel, and on December 15, 1941, made its Report and Order determining that Harry J. Patterson had violated Section 12(a) of said Act, and that such violation warranted his removal as an employee of the Bureau of Unemployment Compensation of Ohio.

2. That the employment of Harry J. Patterson with the Ohio Bureau of Unemployment Compensation was at all times in a State activity financed by Federal funds, and the Ohio Bureau of Unemployment Compensation was at all times during said employment in receipt of Federal Loans and Grants, pursuant to Title III of the Social Security Act, 42 U.S.C.A. § 501 et seq.

3. That Harry J. Patterson and the State of Ohio were duly notified of the United States Civil Service Commission's determination and order by registered mail on December 17, 1941; that neither petitioned for a review within the period prescribed by Section 12(c) of the Hatch Act, and the Commission's determination and order became final and absolute.

4. That the rate of pay received by Harry J. Patterson during the period of his employment with the Ohio State Bureau of Unemployment Compensation for the months that the violations described in paragraph I above occurred, was $300 per month.

5. That the employment of Harry J. Patterson with the Ohio Bureau of Unemployment Compensation terminated on or about January 1, 1942.

6. That on July 16, 1942, a petition was filed with the United States Civil Service Commission alleging all the Findings of Fact hereinbefore set out, and further that on or about February 11, 1942, Harry J. Patterson had become employed by the State of Ohio as Coordinator (automobile and sugar rationing) of the Ohio State Council of Defense, and that ever since said time had been and then was an employee of the State of Ohio; and that said employment was contrary to the provisions of Section 12(b) of the Hatch Act, in that the reemployment of Harry J. Patterson by the State of Ohio occurred within eighteen months from the date of the Commission's final order and determination on December 15, 1941, aforementioned; and said petition contained a prayer that an order be made and certified by the United States Civil Service

Commission to the Social Security Board of the Federal Security Agency, requiring it to withhold from its loans or grants to the State of Ohio an amount equal to two years' compensation at the rate Harry J. Patterson was receiving for his employment with the Ohio Bureau of Unemployment Compensation at the time of the occurrence of the violations of the Hatch Act, as found by the Commission in its Order dated December 15, 1941.

7. That pursuant to the petition described just above the United States Civil Service Commission on the 16th day of July, 1942, issued an Order directed to the State of Ohio and Harry J. Patterson to show cause before the United States Civil Service Commission, or its Examiner, on the 31st day of July, 1942, in Columbus, Ohio, why an order should not be made against the Social Security Board of the Federal Security Agency, requiring it to withhold from its loans or grants to the State of Ohio, an amount equal to two years' compensation at the rate Harry J. Patterson was receiving for his employment at the time as set forth in the paragraph just above.

8. That a copy of the petition and the Order to Show Cause was duly served on the State of Ohio and Harry J. Patterson, and a hearing was held in Columbus, Ohio, on July 31, 1942, before the Honorable James W. Irwin, Chief Examiner, United States Civil Service Commission, the United States Civil Service Commission and the State of Ohio being represented at said hearing by their respective Attorneys of record, and Harry J. Patterson appearing personally.

9. That after the hearing of testimony, various motions and arguments of Counsel at the hearing in Columbus, Ohio, on July 31, 1942, the Chief Examiner, thereafter, on September 24, 1942, submitted his Preliminary Report to the United States Civil Service Commission.

10. That after receiving copies of the Preliminary Report above mentioned the respondents filed their briefs with the United States Civil Service Commission which, thereafter, on January 4, 1943, issued its decision on the Proceeding to

Show Cause and determined that an order be made and certified by the United States Civil Service Commission, in compliance with Section 12(b) of the Hatch Act, to the Social Security Board of the Federal Security Agency, requiring it to withhold the sum of $7,200 from loans or grants to be made by it to the Ohio Bureau of Unemployment Compensation, an agency of the State of Ohio, or to the State of Ohio on account of said Bureau.