Frank J. FELA, Plaintiff,

v.

UNITED STATES of America, MERIT SYSTEMS PROTECTION BOARD, Defendant.

CITY OF CUYAHOGA FALLS, Plaintiff,

v.

UNITED STATES of America, MERIT SYSTEMS PROTECTION BOARD, Defendant.

Nos. C88–2553A, C88–2702A.

United States District Court, N.D. Ohio, E.D.

Aug. 8, 1989.

---

Timothy J. Truby, Akron, Ohio, for Frank J. Fela.

Virgil Arrington, Jr., Cuyahoga Falls, Ohio, for City of Cuyahoga Falls.

Patricia A. Price, Trial Atty., U.S. Merit Systems Protection Bd., Washington, D.C., for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

Before the Court is a consolidated action concerning a petition filed by the City of Cuyahoga Falls (City) for the review of a decision by the Merit Systems Protection Board (Board) in the matter of *Special Counsel v. Frank J. Fela et al.*, 37 M.S. P.R. 184. For the reasons detailed herein, the Court hereby affirms the decision of the Board in its order removing Mr. Fela from his position with the City.

### II. FACTS.

During a period between late 1984 and early 1985 Lola Coker, an employee with the Akron Metropolitan Housing Authority (AMHA) complained to the Department of Housing and Urban Development (DHUD) alleging violations of the Hatch Political Activities Act (Hatch Act) by then AMHA Personnel—Management Administrator Frank J. Fela.[1] On June 1, 1984 Mr. Fela resigned his position with AMHA before any action was taken against him.

---

1. The Court's discussion of the factual background should not be construed as findings of fact. The standard of review is a determination based on whether or not the Board's decision is in accordance with law under 5 U.S.C. § 1508.

In January of 1986, Mr. Fela accepted the position of Financial Director with the City of Cuyahoga Falls. In October of that same year, the Merit Systems Protection Board's Office of Special Council (OSC) filed a complaint on the Board's behalf charging Mr. Fela, *inter alia*, with violations of the Hatch Act, 5 U.S.C. § 1501 *et seq.* occurring while he was with AMHA. Cuyahoga Falls was included as a named party to these proceedings under 5 U.S.C. §§ 1504, 1505.

Subsequent to a hearing on the merits of the complaint, the CALJ recommended that the Board issue an order to remove Mr. Fela from his current position with the City. On June 24, 1988 the Board found that the evidence heard before the CALJ and exceptions made thereto warranted a removal order. In conclusion, the Board notified the City that it would be subject to the withholding provision of 5 U.S.C. § 1506 if Mr. Fela was not removed within thirty (30) days. Pursuant to 5 U.S.C. § 1508, both Mr. Fela and the City individually appealed the Board's decision by filing suit in this Court (Case No. C88–2702A and C88–2553A). Mr. Fela, through counsel, filed for stay of the final administrative order requiring Fela's removal within thirty days or enforcement of the withholding provisions of 5 U.S.C. § 1506 against the City of Cuyahoga Falls. The Court properly scheduled a hearing on plaintiff's motion and then granted a temporary restraining order but with the qualification that the stay order would not take effect unless Mr. Fela was suspended from his position as finance director with the City of Cuyahoga Falls by midnight on July 23, 1988. Mr. Fela resigned his position. Nonetheless, the City now seeks review of the Board's decision as it applies to their position in this matter, namely, the vacancy created by Mr. Fela's alleged wrongfully precipitated departure.[2]

Arguing their own standing and not vicariously asserting the rights of Mr. Fela, the City's brief in support contends that their defenses warrant a dismissal, or in the alternative, in mitigation of the Board's removal order. As a basis for review of this matter, the Court will address the issues raised by the parties prior to an analysis of the Board's order.

### III. PETITION FOR REVIEW.

The City's brief in support of the petition for review lists five arguments in favor of a reversal. The City's initial argument, that the Board's action is barred by the doctrine of laches, is based primarily on the period of time alleged to have transpired between the initial complaint of wrongdoing, and the Board's actual prosecution of the matter. Second, the City asserts that the application of the Hatch Act to an entity not involved with the alleged violations is inconsistent with the constitutional protections of Fifth Amendment Due Process. The City asserts as a part of this argument that the loss of Mr. Fela and the cost incurred in finding a replacement is an unconstitutional punishment for the residents of Cuyahoga Falls. Third, the City alleges that the Court does not have jurisdiction over these proceedings because Mr. Fela has no connection with any federal funds pursuant to 5 U.S.C. § 1501(2). Fourth, the City urges that since Mr. Fela had already resigned with AMHA, the eighteen month period had tolled by the time he accepted a position with Cuyahoga Falls. Finally, the City sets forth that Mr. Fela's position, duties, and responsibilities establish effective evidence to mitigate any removal order.

In response, the Board provides a four step refutation of the City's arguments. First, the Board asserts that Mr. Fela's voluntary resignation absent a decision by the Board does not initiate the statutory debarment period. Second, the Board argues that the doctrine of laches cannot be asserted as a defense to Hatch Act proceedings because laches is not applicable to suits enforcing a public right and protect-

---

2. The Court recognizes that there may be a mootness issue involved with this appeal now that Mr. Fela has resigned his position with the City and has filed with the Court a motion for voluntary dismissal. However, because there exists the remote possibility that Mr. Fela may be reinstated, the Court is unwilling to address the issues of mootness *sua sponte.*

ing a public interest. The Board additionally asserts that even if the Court entertains the City's laches defense, the City has failed to meet its burden of establishing an unreasonable delay or a showing of undue prejudice. The Board's third argument is directed at the City's constitutional and federal funding challenges. Stating that the U.S. Supreme Court has previously established the constitutional validity of the Hatch Act, and that a violator's connection with federal funds only applies to that agency where the misdeeds occurred, the Board urges that the present application of this statute is sound. Finally, the Board argues that their decision is fully supported by the severity of the violations and bears a rational relationship to the goal of preventing political abuse, the totality of which substantiates the removal order.

### A. Standard of Review.

█ 5 U.S.C. § 1508 provides in pertinent part:

.... The court shall review the entire record including questions of fact and questions of law

... the court shall affirm the determination or order, or the modified determination or order, if the court determines that it is in accordance with law. If the court determines that the determination or order, or the modified determination or order, is not in accordance with law, the court shall remand the proceeding to the Board with directions either to make a determination or order determined by the court to be lawful or to take such further proceedings as, in the opinion of the court, the law requires.

This statute limits judicial review of Board decisions to a "in accordance with law" standard. If the Court finds that such is the case, the statute mandates that the order be affirmed. Conversely, if not in accordance with law, the matter is to be remanded with directions as the law requires. The Court now turns to a review of the Board's order.

### B. Removal Order.

The Court will address each of the City's arguments challenging Mr. Fela's removal and determine whether they indicate any basis for finding that removal is not in accordance with law.

### PENALTY PERIOD

█ The initial challenge deals with the penalty provision of the Hatch Act. Specifically, whether Mr. Fela can be charged under the statute and penalized after he had voluntarily removed himself from public employment for a period of eighteen months, i.e., the maximum debarment penalty provided in the Act. The City argues not only that the eighteen month period requiring a violation to abstain from public employment begins to run upon removal, but that a resignation on its own constitutes removal for purposes of the Act. Since Mr. Fela first resigned on June 1, 1984, and did not surface in public employment until some twenty months later in January of 1986, the City urges that the penalty provision has been satisfied and presently is inapplicable. In support, the City provides previous Board opinions which indicate that resignations have been recognized by the Board to constitute Hatch Act removals. Additionally, the City argues that the case of Neustein v. Mitchell, 52 F.Supp. 531 (S.D.New York 1943) should not be followed.

In rejecting the City's arguments, the CALJ stated "... that a voluntary resignation does not divest the hearing tribunal of jurisdiction to determine if the law has been violated." (Recommended Decision p. 21). Affirming these findings, the Board stated that Congress never intended to allow voluntary breaks in employment to frustrate the penalty provisions of the Act. The Court agrees. The authority cited by the City simply does not support its interpretation of the penalty provision. Rather, as the Board suggests in their responding brief, and is supplied in the accompanying case law, the eighteen month penalty period only begins to run once the Board has rendered a decision. Neustein v. Mitchell has remained the authority on this point and is still good law. Therefore, because the Board's decision is in accordance with

law, the Court finds the City's first argument unpersuasive.

## LACHES

■ The City's next contention is that the Board's prosecution of this matter represents an unreasonable delay in conflict with the doctrine of laches. Basing this argument on a two year period between Lola Coker's first contact with a DHUD investigator in October of 1984, and the date OSC filed their complaint on October 9, 1986, the City claims prejudice because they would have never hired Mr. Fela had they known an investigation was being conducted.

In addition to arguing that a laches defense is not presently available, the Board responds by asserting that the City's petition fails to prove unreasonable delay or undue prejudice.

In finding that laches does not apply, the CALJ stated that there was no inexcusable delay, that there is no applicable statute of limitations, and even if there was, the most comparable is the five years period provided in 18 U.S.C. § 3282 covering criminal coercion of political contributions. (18 U.S.C. § 602).

Both the CALJ and the City cite *Special Counsel v. West*, 18 M.S.P.R. 519 (1984) as the basis for determining the propriety of a laches defense. The two part test requires that; (1) there be an unexcused or unreasonable lapse of time; and (2) that there be a showing of prejudice by the defending party. The City does not argue that this determination is not in accordance with law. Rather, the City's laches argument is based on a dispute with the weighing of the evidence by the CALJ and the Board. Due to the fact the the correct law was applied to this matter, and the board found there to be no unreasonable lapse of time, this Court is unwilling to change the lower body's findings of fact absent an abuse of discretion. The Board's decision rejecting petitioner's laches defense is in accordance with law.

## DUE PROCESS

The City challenges the Board's conduct in this matter as being so arbitrary that it violates the protections of the Fifth Amendment. The City urges that the concept requiring laws to have rational relationships to legitimate governmental ends protects the residents of Cuyahoga Falls from the wrongful practice of the Board asserting its jurisdiction over the City and Mr. Fela. As a basis for this argument, the City sets forth that when the alleged violations occurred, Mr. Fela was employed by AMHA, not Cuyahoga Falls. Asserting that they had no knowledge of his political wrongdoings, the City argues that the act bears no rational relationship to preventing political abuse. The City additionally includes a procedural argument blaming an inability to prepare a defense on the two year time period that had passed since the occurrence of the violations. Collectively, this is all argued to have unconstitutionally subjected the residents of Cuyahoga Falls to punishment for the statutory violations of a third person.

In response, the Board argues that the U.S. Supreme Court decision of *State of Oklahoma v. U.S. Civil Service Commission*, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1927) constitutionally validated the penalty provisions of the Hatch Act. In addition, the Board asserts that the statutory scheme of the Hatch Act is rationally related to the goal of preventing political abuse.

■ The Fifth Amendment of the United States Constitution mandates: "No person shall ... be deprived of life, liberty, or property, without due process of law." This provision is a limitation on arbitrary authority and a guarantee against unreasonable legislation which demands that all laws shall not be unreasonable, capricious, or arbitrary. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). To determine the Hatch Act's Fifth Amendment legitimacy, the Court will initially determine whether the Act bears a rational relationship to its purpose of preventing political abuse. Second, the Court will pass upon the legitimacy of

the Hatch Act's application to Cuyahoga Falls.

■ The purpose of the Hatch Act is to remove the impact and influence of partisan politics upon agencies that receive funding from the federal government. Aside from being found guilty of violating the Act, the only punishment is removal from office. A government agency receiving federal funds need not remove a violator unless it wishes to avoid the loss of federal funding. It is apparent that the provisions of 5 U.S.C. § 1506 are designed to prevent the scenario of one agency removing a violator only so that another can immediately hire him. The eighteen month debarment period simply prevents a Hatch Act violator from acquiring a public office. Absent such a provision, a Hatch Act violator could hopscotch from one agency to another without abatement. The Court finds that the removal of a violator from public employment for 18 months serves as a rational and non-arbitrary procedure for implementing the Act's purpose of deterring political abuse.

Cuyahoga Falls argues that applying this action to the City is an arbitrary extension of the Hatch Act's jurisdiction. On June 24, 1988, Mr. Fela was found to have violated the Hatch Act while working with AMHA, and was ordered to be removed from his position with the City. The City's position would require this Court to allow violators to resign from these positions and voluntarily remove themselves from *any* Hatch Act proceedings simply because the agency they worked for at the decision time was not involved with the original violation. The Court finds that this would frustrate the purpose and scope of the Hatch Act. Alleged violators should not be inferentially rewarded by a voluntary resignation the moment the violator gets wind of a Hatch Act investigation. Nor should the violator expect to escape inquiry by accepting a position with another agency that was not involved with the original investigation. 5 U.S.C. § 1506 specifically makes both agencies responsible for the employment of a Hatch Act violator, so long as it is within the 18–month period

from the date the Board reaches a determination. The Court finds that the application of the Hatch Act to the City of Cuyahoga Falls and Frank J. Fela is consistent with the protections of the Fifth Amendment.

## CONNECTION TO FUNDS

■ Next, the City argues that since Mr. Fela's position as Director of Finance has no connection to federal funding, the Board is deprived of its statutory jurisdiction. However, when he was working at AMHA during the period when the violations took place, he had a direct connection with federal funding. The case of *State of Ohio v. United States Civil Service Commission*, 65 F.Supp. 776 (S.D.Ohio 1946), provides that the dispositive issue of the withholding provision is that the violator must be connected to federal funds at the time the violations took place. The Court finds that any application to the contrary would frustrate the purpose of the Act. Since Mr. Fela's employment was covered by 5 U.S.C. § 1501(2) at the time the violations occurred, the Board's decision to remove him from his position with the City is in accordance with law.

## MITIGATING FACTORS

■ The City's final reason for reversing the Board's removal order is that the stringent remedy of removal for Hatch Act violations warrants the consideration of other factors in mitigation of the penalty. These very same factors were deliberated before the Board prior to its determination. The Court is not in a position to reverse these findings absent a valid claim that the findings were reached in a manner contrary to law. The Court finds no such valid claim and concludes that the strict remedy of removal or loss of federal funding was imposed in accordance with law.

## IV. CONCLUSION.

For the reasons set forth, the Court finds that the decision of the Merit Systems Protection Board regarding the Hatch Act vio-

lations of Frank J. Fela and the sanctions imposed to be in accordance with law.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons set forth in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the decision of the Merit Systems Protection Board in the matter of *Special Counsel v. Frank J. Fela et al.*, 37 M.S.P.R. 184, is affirmed.